UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

CINDY S. CRULL,                              )
    Plaintiff,                           )
                                             )
       v.                           )    CAUSE NO.: 2:13-CV-322-JEM
                                             )
CAROLYN W. COLVIN,                           )
Acting Commissioner of the                   )
Social Security Administration,              )
    Defendant.                           )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Cindy S. Crull

on September 11, 2013, and a Plaintiff's Brief in Support of Reversing the Decision of the

Commissioner of Social Security [DE 16], filed by Plaintiff on February 18, 2014.  Plaintiff

requests that the decision of the Administrative Law Judge be reversed and remanded for further

proceedings.  On May 28, 2014, the Commissioner filed a response, and on June 11, 2014,

Plaintiff filed a reply.  For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On March 9, 2011, Plaintiff filed an application for supplemental security income ("SSI")

with the U.S. Social Security Administration ("SSA") alleging that she became disabled on

November 4, 2009.  Plaintiff's application was denied initially and upon reconsideration.  On

August 7, 2012, Administrative Law Judge ("ALJ") Henry Kramzyk held a hearing at which

Plaintiff, with a non-attorney representative, and a vocational expert ("VE") testified.  On

August 21, 2012, a supplemental hearing was held via telephone at which the non-attorney

representative and the VE testified, but the claimaint did not.  On September 14, 2012, the ALJ

issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.    The claimant has not engaged in substantial gainful activity since March 9, 2011, the application date. (20 CFR 416.971 *et seq.*).

2.    The claimant had the following severe impairments: obesity and degenerative changes in the lumbar spine with radiculopathy (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    The claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about 6 hours of an 8 hour workday, and sit for about 6 hours of an 8 hour workday.   She can never climb ladders, ropes or scaffolds and can occasionally climb ramps and stairs, as well as balance, stoop, crouch, kneel, and crawl.   She must avoid concentrated exposure to workplace hazards such as dangerous machinery and unprotected heights.

5.    The claimant has no past relevant work (20 CFR 416.965).

6.    The claimant was 50 years old, defined as an individual closely approaching advanced age on the date the application was filed (20 CFR 416.963).

7.    The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 416.969 and 416.969(a)).

10.   The claimant has not been under a disability, as defined in the Social Security Act, since March 9, 2011, the date the application was filed (20 CFR 416.920(g)).

On July 10, 2013, the Appeals Council denied Plaintiff's request for review and on August 20, 2013, denied her request to reopen the decision, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

Plaintiff was treated by neurologist Steven Bayer beginning in 1999. He prescribed pain medication for Plaintiff's back and hip pain and psychotropic medication for anxiety and depression. On August 17, 2012, Dr. Bayer completed a functional assessment. It reported that Plaintiff had pain in her hip, thigh, leg, sciatic nerve, buttock, and tail bone, and numbness in her right foot, with weakness at her hip flexor, sensory loss in right right leg and an unsteady gait, as well as depression and anxiety. Dr. Bayer reported that Plaintiff would not be able to sit or stand more than twenty minutes before needing a break and could sit or stand/walk for less than two hours in a workday.

On April 19, 2011, consultative psychological examiner Irena M. Walters performed an examination of Plaintiff. The report concluded that Plaintiff had depressive disorder and anxiety disorder, had a fair fund of information, was able to recall two of three cities after seven minutes, and was inaccurate with serial 7s. In the "mental status examination" section, the report states that Plaintiff's "[g]ait/posture appeared normal."

On April 29, 2011, consultative examiner Dr. Kanayo Odeluga performed an examination. He reported that Plaintiff had right hip tenderness, a positive Patrick test indicating hip pain and dysfunction, a mildly antalgic gait, mild difficulty walking on her heels and toes, a depressed mood, and a sad affect.

On April 24, 2012, Plaintiff saw Dr. Patrick J. Hobbins for a check-up addressing her chronic hip pain and depression. He noted that she was positive for arthralgias and had depression. He noted that on physical exam she had normal range of motion. He made several referrals to specialists, including to neurology for her ongoing hip and leg pain.

At the hearing, Plaintiff testified that she was unable to work because of back, leg and foot pain, including numbness and weakness, despite strong pain medications. She estimated that she could lift about ten pounds, could walk about one hundred feet at a time on a good day, and sit or stand about fifteen minutes at a time. Her reports to SSA indicated that her financial resources were so limited that she could not afford the filing fee for bankruptcy.

The VE testified at the hearing that someone with the RFC later adopted by the ALJ could perform light jobs including marker, routing clerk, and bakery worker. If she were limited to sitting for two hours and walking for two hours or would miss more than four days of work per month, she would be precluded from any work.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has

applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)

(quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

      A court reviews the entire administrative record but does not reconsider facts, re-weigh

the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its

judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*

*v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).

Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within

the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but

whether the ALJ "uses the correct legal standards and the decision is supported by substantial

evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v.*

*Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th

Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner

commits an error of law," the Court may reverse the decision "without regard to the volume of

evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999)

(citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

      At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the

reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the

important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55

F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must

"'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a

reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the

claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3)

Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations?

If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step

four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not

disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the

claimant perform other work given the claimant's RFC, age, education, and experience? If yes,

then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20

C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697,

699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The

RFC "is an administrative assessment of what work-related activities an individual can perform

despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR

96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The

RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir.

2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one

through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also*

*Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

### A.      Residual Functional Capacity

Plaintiff argues that the ALJ did not properly evaluate the medical and mental health

opinions in the record. The Commissioner argues that the ALJ's findings are supported by

substantial evidence.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young, 362 F.3d at 1002.* In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Plaintiff argues that the ALJ has not identified a sufficient basis for his RFC finding, especially when rejecting a prior ALJ decision. In particular, Plaintiff argues that the ALJ rejected the opinions of Plaintiff's long-term treating specialist and the state agency physician, but did not obtain any evidence to replace what he rejected. The Commissioner argues that the RFC was based on a review of the entire record and is supported by substantial evidence.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Being "not inconsistent" does not require that opinion be supported directly by all of the other evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2p, 1996 WL 374188, at *3 (July 2, 1996). To be "substantial," conflicting evidence "need only be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Schmidt v. Barnhart*, 395 F.3d at 744.

In this case, the ALJ noted that Dr. Bayer is a specialist who has treated Plaintiff since 1999. The ALJ did not give controlling weight to Dr. Bayer's opinion, stating that it was inconsistent with the findings of three other practitioners, all three of which were reports from single examinations. The first was a consultative psychological examiner who noted, as part of a mental status examination, that Plaintiff's gait and posture appeared normal. Plaintiff did not visit the psychologist for a physical examination and one was not performed. Another report was from a family practitioner who performed a general physical examination and ordered a number of screening tests and referrals to specialists, including a referral to a neurological specialist for Plaintiff's hip pain. The ALJ noted that the doctor wrote as part of description of a physical exam: "Muscoloskeletal: Normal range of motion." AR 420. The third was a report from a physical consultative examiner. The ALJ mentioned the examiner's reports that Plaintiff had "tenderness over the lateral aspect of right hip with positive Patrick's test" (indicating hip pain and dysfunction), "mild antalgic gait," and mild difficulty walking on toes and heels, but

9

emphasized his finding that Plaintiff had full range of motion. AR 385-86. The ALJ does not explain how these reports of normal range of motion are so inconsistent with the treating specialist's conclusions as to render it not worthy of weight, particularly where those other reports also included the same types of limitations noted by the treating specialist. *See* SSR 96-2p, at *3.

The ALJ also did not identify what weight he gave to Dr. Bayer's opinion. If the ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6). "If the ALJ discounts the [treating] physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulated' his reasons." *Elder v. Astrue,* 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision."); *Schmidt v. Astrue*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if it . . . 'is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of

disability.'") (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)). He must, however, explain what weight he is giving to the opinion. *Hamilton v. Colvin*, 525 F. App'x 433, 438 (7th Cir. 2013) ("The most obvious problem is that the ALJ said she was giving the doctors' opinions 'appropriate weight' without specifying how much weight is appropriate.").

The ALJ did not explain how much weight he gave to the opinion of Dr. Bayer and appears to have completely discounted it, despite the fact that Dr. Bayer's opinion of Plaintiff's functional capacity was the only such report considered by the ALJ. An ALJ may not simply ignore an opinion that addresses a plaintiff's ability to work, but must "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." SSR 96-5p, 1996 WL 374183, at *3, *5 (July 2, 1996); *see also Hamilton*, 525 F. App'x at 438-39 (remanding in part for failure to address conflict between the RFC and physicians' opinions about here capacity). "While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96–5p) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it.").

Reference to a few lines from single reports of one-time examinations, one of which was not even a physical examination, is not a "sound explanation" of the ALJ's decision to (apparently) completely reject the opinion of Plaintiff's treating specialist, particularly where the opinion contains no explanation of the evidence the ALJ did rely on for the RFC. In particular, Plaintiff argues that there is no explanation of the basis for the ALJ's conclusion that Plaintiff

could stand and walk for six hours during a workday, that she could lift twenty pounds and lift

and carry ten pounds for more than five hours, or stoop, crouch, crawl, and kneel for more than

two hours per day, all of which are required for a finding that Plaintiff can do more than

sedentary work. *See* 20 C.F.R. § 404.1567(a), (b). Dr. Bayer explicitly opined that Plaintiff

would be unable to sit or stand/walk more than two hours in an eight hour day, and could never

lift twenty pounds, stoop, crouch, or climb ladders. AR 450-52. Plaintiff reported that she was

unable to walk more than about a hundred steps and could sit or stand for about fifteen minutes

at a time. Although the ALJ concluded that these reported limitations were not supported by the

record, and explicitly disregarded Dr. Bayer's of Plaintiff's functional capacity, he did not

explain what opinions or medical evidence he used as the basis of his RFC conclusions. The

ALJ mentioned the three single examination reports only to discount the opinion of the treating

specialist and stated that he disregarded the opinions of the state agency medical consultants,

noting that evidence received after their review indicated more severe impairments than they

found. The ALJ does not refer to any other medical opinions that address Plaintiff's physical

limitations. Plaintiff points out that in an earlier proceeding another ALJ found that Plaintiff was

limited to sedentary work, and argues that the ALJ has not described any additional evidence that

would establish that she is capable of performing more strenuous work than she was capable of

then. A repeated finding that Plaintiff is limited to sedentary work would lead to a conclusion

that Plaintiff, now over 50, is disabled and entitled to benefits. *See* 20 C.F.R. § 404, Subpt. P,

App. 2 ("Individuals approaching advanced age (age 50-54) may be significantly limited in

vocational adaptability if they are restricted to sedentary work. When such individuals have no

past work experience or can no longer perform vocationally relevant past work and have no

transferable skills, a finding of disabled ordinarily obtains."); *Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013) ("[T]he grids mandate a finding of disability at [the plaintiff]'s 50th birthday if she is limited to sedentary work.").

Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight*, 55 F.3d at 314 (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618. In this case, the ALJ failed to give controlling weight to the treating physician's opinion regarding the nature and severity of Plaintiff's impairments without explaining how his opinion was inconsistent with other substantial evidence in the record, did not identify any medical opinion from a treating or examining physician to which he gave greater weight, and failed to identify the evidence on which he based the conclusion that Plaintiff was capable of more than sedentary work.

Plaintiff also argues that the ALJ erred in failing to include non-exertional limitations in the RFC. She argues that the side effects from her strong pain medications and her pain itself interferes with her ability to concentrate and stay on task. On remand, the Court recommends that the ALJ explicitly address Plaintiff's mental limitations, including those caused by her pain, side effects from her medications, and her diagnosed depression, and how those mental limitations, especially considered in combination with her physical impairments, including her obesity, affect her RFC. *See, e.g., Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in

isolation."); *Hernandez v. Astrue*, 277 F. App'x 617, 623-24 (7th Cir. 2008) ("Social Security

Ruling 02-1p requires an ALJ to consider the exacerbating effects of a claimant's obesity on her

underlying conditions (even if the obesity is not itself a severe impairment) when arriving at a

claimant's RFC."); 20 C.F.R. § 404.1523 ("[W]e will consider the combined effect of all of your

impairments without regard to whether any such impairment, if considered separately, would be

of sufficient severity" to find disability.); S.S.R. 02-1p, 2002 WL 34686281, at *3 (Sept. 12,

2002) ("Obesity may also cause or contribute to mental impairments such as depression. The

effects of obesity may be subtle, such as the loss of mental clarity and slowed reactions that may

result from obesity-related sleep apnea.").

The ALJ failed to explain his reasoning and to build a logical bridge from the medical

evidence, particularly the evidence provided by treating sources, to his conclusions.

Accordingly, this case is being remanded for a new RFC that fully addresses the medical records

in evidence.

**B.**      **Credibility Assessment**

Plaintiff argues that the ALJ improperly evaluated Plaintiff's credibility.      The

Commissioner argues that the ALJ's opinion is supported by substantial evidence.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical

evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or
> other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any
> medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;

> (vi) Any measures . . . used to relieve your pain or other symptoms
> . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96–7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

The ALJ found Plaintiff less than credible in part because of her conservative treatment, noting that she has received primarily pharmacological therapy, did not participate in physical therapy, and was not recommended any more aggressive treatments by any physicians. He also noted that Plaintiff did not always attend follow up appointments as regularly as recommended. Plaintiff argues that the ALJ erred in relying on a perception of conservative treatment without evidence that Plaintiff failed to pursue recommended treatment, and erred in failing to ask

Plaintiff why she did not seek additional treatment, especially since there was evidence of Plaintiff's lack of financial resources in the record.

The ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide" and "may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." SSR 96-7p, at *7; *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure [to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p).

In this case, the ALJ noted that Plaintiff did not attend a follow-up appointment for her hip pain until several months after the recommended date, but did not mention any other failure to follow a prescribed treatment plan. At the hearing, the ALJ asked Plaintiff if she had undergone other types of treatment, but did not explore her reasons for conservative treatment. Although Plaintiff was not asked about her ability to afford treatment or other reasons she may have had for not seeking additional treatment options, Plaintiff argues that the record contains several indications that Plaintiff lacked financial resources for additional treatment. *See Craft*, 539 F.3d at 679 ("Here, although the ALJ drew a negative inference as to [the plaintiff]'s

credibility from his lack of medical care, she neither questioned him about his lack of treatment or medicine noncompliance during that period, nor did she note that a number of medical records reflected that [the plaintiff] had reported an inability to pay for regular treatment and medicine.").

In finding that Plaintiff's allegations of pain were not fully credible, the ALJ noted that Plaintiff "has not been prescribed any ambulatory aids, and the objective findings on MRI and EMG do not rise to a severity whereby she would need to utilize one," AR 76, apparently finding Plaintiff less than credible because she testified that she often leans on furniture or walls to aid her in walking and had a cane, even though one was not prescribed for her.  It is not apparent to the Court how Plaintiff's use of ambulatory devices makes her allegations of pain and limitation less credible rather than bolstering them.  *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription."); SSR 96-7p at *6 ("[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence.").  The regulations specifically remind ALJs to take into account in their credibility determination that, for example, "[t]he individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms" and "the individual's symptoms . . . may be relieved with over-the-counter medications." SSR 96-7p, at *8.  The ALJ failed to explain how use of non-prescribed medical devices or coping mechanisms shows that Plaintiff's allegations

of pain are less than credible, rather than that Plaintiff uses assistive devices because of the pain and weakness she experiences.

Plaintiff also argues that the ALJ erred in finding her less than credible because she applied for benefits multiple times after previous applications were denied.  The Court is concerned by the ALJ's reasoning, particularly in this case where, as described above, if the previous RFC limiting Plaintiff to sedentary work were adopted by this ALJ, Plaintiff would be considered disabled.  The ALJ has failed to explain how Plaintiff's continued assertion that she is disabled and filing of new applications with additional information, including the potentially dispositive issue of her advancing age, indicate that she is not credible.

The ALJ improperly relied on Plaintiff's failure to seek treatment to find her less than credible and failed to address other factors he should have included in his credibility assessment. On remand, the ALJ is directed to fully consider Plaintiff's testimony and the entirety of the record in compliance with the applicable directives when determining her credibility.

## C.    Waiver of Counsel

Plaintiff argues that the ALJ failed to develop a full and fair record and did not ensure a valid waiver of counsel.  The Commissioner argues that the written documents provided to Plaintiff before the hearing were sufficient to ensure waiver.

"A claimant has a statutory right to counsel at a disability hearing," but that right is waivable. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (citing 42 U.S.C. § 406, 20 C.F.R. 404.1700; *Thompson v. Sullivan* , 933 F.2d 581, 584 (7th Cir.1991)). The Seventh Circuit Court of Appeals has required the ALJ to explain three things to a pro se claimant "[t]o ensure a valid waiver of counsel[:] . . . (1) the manner in which an attorney can aid in the proceedings, (2) the

possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Binion v. Shalala*, 13 F.3d at 245; *see also Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A non-attorney representative's appearance does not alone operate as a valid waiver. *Beth v. Astrue*, 494 F. Supp. 2d 979, 1001 (E.D. Wis. 2007). However, other courts have determined that the forms sent by the SSA can fulfill the requirements, and the Court concludes that the forms sent in this case do so. AR 147-50. *See, e.g., Griggs v. Astrue*, No. 1:12-CV-00056, 2013 WL 1976078, at *5 (N.D. Ind. May 13, 2013) ("Here, the ALJ fulfilled these three requirements through various papers sent to [the plaintiff] by the Social Security Administration prior to the hearing and through statements he made to her at the beginning of the hearing.").

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the relief requested Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 11th day of March, 2015.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record